Good morning, Your Honors. I'm Philip DeMazza. I represent the appellant in this case. The Court has given us ten minutes to argue each side, and I'm going to reserve a couple minutes of my time, if I may. All right. Go ahead. Thank you. The Court has just listened to some argument about the capping of 2D1.1A3. And one of our arguments is, and this is, I'm sure, the reason why this case has been calendared along with the last case, is that our position is that because the parties agreed that my client was entitled to an adjustment under 3B1.2 as a mitigating role of two levels. But here he got the minimum mandatory sentence. He got the minimum mandatory because, and that's the second argument, he couldn't the judge wouldn't agree that he had met his burden of proof that he was entitled to the fifth prong of the safety valve. This particular argument doesn't go to the safety valve. The amendment that was in place when my client was arrested in November of 2003, which talks about, I think it's Amendment 642, Section C, provides, and it's the force of law under Mistretta, that he's entitled, if there's a mitigating role found for him, he's entitled to be capped at a level 30. So what happens if there's a clash between a mandatory minimum and the cap at level 30? There's no clash. The only difference is, and it's, I note the Court sees that, but there is no clash. It's a supplement. The requirements for safety valve require one thing that 2D1.1A3 does not, and that's convincing the government that you've said all you know. Safety valve requires you to lay out everything that's involved. 2D1.1A3 does not. If your client qualifies for the safety valve, you may have an argument about capping at 30, but the Court determined that your client did not qualify for the safety valve. In that event, do we have any issue to talk about with regard to the 30-level cap? Yes. Sorry to interrupt the Court. The safety valve and 2D1.1A3 are two different arguments. Under the safety valve, unless he qualifies, unless he satisfies the fifth prong, tells the government everything he knows and the government agrees to it, that he's a minor participant and has said all he knows, he's not eligible for safety valve. 2D1.1A3 doesn't talk about that. And this is a force of law. There was a comment made a few minutes ago that the guidelines at the time of this case were not the force of law, but I would disagree with that observation under Mistretta v. United States. That case came down in 89 and upheld the guidelines and said basically because Congress authorized the commission to do these things and under, I believe it's section 994A1 and subsection P, R, and X, when those guidelines, when those amendments to the guidelines were promulgated, you had 180 days to make an objection. Within that time, no objections were made or until November 1st of that year. And after those objections were not made, that amendment became the force of law. That's what Mistretta talks about. Now, Judge ---- I don't think I made my question clear. Let's assume for the moment that you don't win on your argument that your client's entitled to safety valve relief. Is there a second issue for us to consider? I mean, the government's argument, I think, was very straightforward. Mandatory minimum trumps your argument about 50 or 30 level cap. Isn't that the case? No. Okay. Then could you address why that's not the case? Because under the ---- under 2D1.1A3, if he's found to have a mitigating role, which the government and the court also found when it made the sentencing, he is entitled to be capped at 30. Now, that conflicts or the court may think that that conflicts with the safety valve provision. I say---- What it conflicts with is the mandatory minimum. The statute says he's got to get, I've forgotten what it is, 120 months. Isn't that the end of it? No. Because Congress authorized under ---- and Mistretta recognized in Judge Scalia in his dissent---- Counsel, I'm really puzzled by the continued references to Mistretta, because we've had some subsequent developments here, and these guidelines are now advisory. They are not mandatory. They do not have the force and effect of law. I understand that judges may inform themselves by reading the guidelines. But we have remanded hundreds and perhaps thousands of cases to district courts in the last year as a result of Booker. For the purpose because---- And we didn't even get a 28J letter from either counsel in this case. Well, the reason that those cases have been remanded under Ameline is because judges were applying for giving upward adjustments because of things that occurred that weren't thoroughly vetted in the hearing of sentencing. That's not this case. Well, do you think Booker has any impact on this case? No. This is the---- And you're not looking for a limited Ameline remand? Well---- I'm just asking you, are you looking for that or not? We're not looking for a limited Ameline. We believe that under 2D1.1A3 at the time of this sentencing, he's entitled to be capped at a level 30. Now, the Court says, well, now it's advisory, but it wasn't advisory at the time of his commission of his crime. Now it is. Now it is. Then the Court's saying it's retroactive. And I don't believe the Court can find, has found in the past that these, that this guideline would be retroactive. And therefore, this guideline applies to this---- Why do you think we're sending all these cases back? Because on those cases, they're in the pipeline of direct appeals. And those cases, the courts have found that the judges went too far up without giving the defendant a right under Booker to contest the legitimacy of the evidence that was presented against him. No, no. Sometimes they didn't go too far up. They just said, well, you know, I think you're an honest person, and we just had a case the other day. You're one of the few honest defendants that's appeared before me, and I believe you, and I believe you've learned a lesson. But I'm just bound by these guidelines, so I've got to give you this guideline sentence. And so that's it. Then we sent it back, and we, the judge then knows that they just look at the guidelines now and at their advisory. And if the judge thinks that the sentence is, under the guidelines, is harsh, it just goes ahead and sentences the person and gives them reason. So you don't want to deprive your client of that opportunity, do you? I wouldn't if it gets me back for a resentencing. Obviously, that's — I'm not going to throw the baby out with the bathwater, but the — Well, you're about to do that. Well, I'm not trying to do that. You're getting awful close. My comment to the Court is, on those other cases where the judges say they had no discretion, the guidelines said you must kick these cases, you must add levels for certain things that the defendant contested. That's another type of case. Right. Okay. Counsel, you still have not quite addressed Judge Clifton's question, I think, which is, you've still got a problem here in that the Court found that you were not entitled, that you weren't entitled, that your client hadn't fully cooperated with the government, and so you're going to get the statutory minimum anyway. That's what the judge found, and that's the second argument I'm going to get to. But at the same time, in the plea agreement, we agreed, under 2D1.183, that he would be capped. If there was a mitigating rule found of 2, he'd be capped at 30. And the judge did not address that. But the guidelines themselves in our case law say if mandatory minimum is higher than guidelines calculation, mandatory minimum wins. Well — And that ended the argument. I think under Mistretta, and I was reading Judge Scalia's, Justice Scalia's dissent yesterday, and he basically said that Congress has authorized the Sentencing Commission to create laws. But the guidelines say exactly that. So your argument that the guidelines have force of law doesn't help you at all. If the guidelines themselves say mandatory minimum trumps guideline calculation. It — no, because they have made this Amendment 640, which allows the Court to cap it at 30. That's a separate part of the guideline. When the statutorily required minimum sentence is greater than the maximum of the applicable guideline range, the statutorily required minimum sentence shall be the guideline sentence. That's what the guidelines say. So even if the guidelines point to a different number, the guidelines also say statutory minimum trumps. Doesn't that end the argument right there? No, because Amendment 640 points out. I think we're going to — we're obviously — We're agreeing to disagree. Yes, but I think 640 and the way that the guidelines were promulgated and issued became the force of law during that period of time. Your time's up. We'll hear from the government. Okay. Thank you. And I'll address the other argument in rebuttal. Thank you. Well, your time is up. Your view is all up, but we'll give you a minute when you come back. Thank you. May it please the Court. Timothy Solel on behalf of the United States. First, regarding the minor role cap, Your Honors are correct. The mandatory minimum controls here. And it's specifically in the plea agreement that if defendant provides all information, he qualifies for safety valve, the government would agree to minor role, including a minor role cap, if he qualified for safety valve. However, he did not qualify for safety valve. Therefore, under 5G1.1B of the guidelines, the mandatory minimum trumps the guideline calculation as agreed to by the parties. So regarding safety valve, a clear error standard of review. The Court did not clearly err in denying safety valve relief. The Court held three evidentiary hearings, as noted, regarding the two safety valve debriefs. The Court carefully evaluated defendant's testimony regarding where he lived in Tijuana. The Court evaluated the government's investigation and the government's agent who testified, including the reports submitted, the photos and diagrams, extremely extensive evidentiary hearings and sentencing hearing. The Court also did not abuse discretion in relying or reviewing the reports submitted that contained hearsay. Yes. He's saying that had he qualified for the safety valve, then the mandatory minimum would not trump the guidelines. If defendant qualified for safety valve, he would be not subject to the statutory mandatory minimum. That's correct. Regarding the hearsay argument, there was sufficient indicia of reliability regarding the hearsay statements in the reports. The reports were detailed, contained photos and diagrams. In fact, defendant admitted that he did not live at these houses. The reports indicated that defendant did not live at this 21 Alamo Street in Tijuana. When defendant took the stand, he admitted that, in fact, he didn't live there. The Court did not specifically rely on any of these reports in making its findings in denying safety valve relief. So there is certainly no abuse of discretion, unless there's anything further the government submits. All right. Thank you. To use a baseball analogy from Tinker's day, I would assume. No, don't use a baseball analogy. This is not a congressional hearing. All right. Well, it's hearsay to hearsay to hearsay to use reports from a little girl in Tijuana to some agents. What were the three names of those baseball players? Tinker's day. There was a chance. Very good. All right. Move ahead of the class. Does that get me? Well, I'm a fan of the Chicago Cubs, so it might get something, but other than that. Well, you've got to be a White Sox fan this weekend. In any event, from a little girl to a Pittsburgh Pirates fan. A lot of suffering up on this bench. To go from a little girl to agents to an agent who comes into court, that's a lot of hearsay. We objected to it. Many times the court cited Barry versus United States. There was some indicia of reliability. There's no indicia of reliability on this. The court basically premised its suspicion that the defendant was not being forthright by the fact that he concluded from all this meritless evidence, hearsay with a small h, that the defendant had a burden to prove. He wasn't forthright because he admitted he lied on a lot of things. He admitted he lied, but it's allowed that he can lie up to the time of the hearing. And even at the time when the court was expressing his concern that he wasn't satisfied with what the defendant said, I offered to let him testify again. The judge said, no, that's not what we're going to do today. And basically. Well, yes, but the court said, I've got all these concerns. And I said, okay, let's put them on the stand again. The judge said, no, let's. How many times does your guy get a chance to testify? I guess until the judge says I no longer don't have any concerns. It's kind of a moving target, wasn't it? Well, you're talking about a guy that. You wanted the third chance, right? Yeah. You're talking about a guy that takes cattle to sell in Kuyakon. He's not the brightest light bulb in the bunch. Let's be frank about it. He didn't have to be bright, to be honest, though. No, but at the same time, he was having imposed upon him a lot of things while in custody that he couldn't have any access to. Even the people that he lived with or lived with for a short time were disavowing that they even knew him. Those are things beyond his control. And he's sitting in jail in San Diego trying to say, hey, help me out. So it's a little bit difficult to put this burden on him, knowing his intellectual makeup and the fact that he had said he'd come clean a number of times and the judge said, yes, I've got these other concerns. And I say, Judge, let me put them on the stand. And the judge says, no, enough's enough. So if he doesn't have any concerns, that's an abuse of discretion if you allow him to go forward with sentencing when the judge still has concerns. We were there to assuage the judge's concerns, not to continue to be that moving target. And obviously, the Court disagreed. Yeah. Okay. Thank you. Thank you.
judges: Pregerson, Clifton, Bybee